### THE RIBSTON.

#### (District Court, E. D. Virginia. October 24, 1912.)

COLLISION (§ 71.*)—ANCHORED VESSELS—DRAGGING ANCHORS IN HIGH WIND.
   A steamship anchored in the morning from one-half to three-quarters of a mile from three loaded coal barges, which had previously anchored alongside each other in Hampton Roads on the western side of the channel into Elizabeth river, during the day the wind was high, and she dragged her anchor, and drifted to within about three ship's lengths of the barges, which then separated; two moving further up the channel and anchoring some distance apart. The steamship put out another anchor, but during the evening that also dragged, and she drifted again, and came into collision with both the barges which had moved. *Held*, that the separation and moving of the barges was a proper maneuver to lessen the danger from the drifting vessel, and that the steamship was solely in fault for the collision, it being her duty to give the barges ample and safe berths, and that she had ample warning from the weather conditions, which did not materially change, and from her previous dragging, that there was danger of interfering with the barges, and could not avoid liability on the ground of inevitable accident.
   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. § 71.*]

In Admiralty. Libel for collision by the Commercial Towboat Company, owner of the barges Alice and Clara, against the Steamship Ribston. Decree for libelant.

John W. Oast, Jr., of Norfolk, Va., for libelant.
Floyd Hughes, of Norfolk, Va., for respondent.

WADDILL, District Judge. On the morning of the 15th of February, 1912, three ocean-going barges—namely, the Clara, 190 feet in length, 35 feet beam, 18 feet draft, loaded with 1,459 tons of coal, with a freeboard of about 3 feet; the Alice, 165 feet in length, 33 feet beam, 15 feet draft, loaded with 1,024 tons of coal; and the Flora, 185.2 feet in length, 35.1 beam, 17.3 feet draft, loaded with 1,512 tons of coal—were anchored alongside, in Hampton Roads, on the western side of the channel of the Elizabeth river, about opposite the Virginian Railroad piers. About 9:30 o'clock of the same morning the British steamship Ribston, 350 feet in length, 43 feet beam, and 29 feet molded depth, came in light, and was anchored by a Virginia pilot in the Roads, from half to three-quarters of a mile to the northward of the barges, and also to the westward line of the channel. The wind during the day was blowing strongly from the northeast and northward, reaching, as shown by the Weather Bureau report at Norfolk at 12:08 p. m. a maximum of 36 miles an hour, and

at 3:20 and 3:45 p. m. reached the same velocity. At 5 p. m. the wind changed from northeast to north, reaching, as shown by the Weather Bureau report at Norfolk, a maximum velocity of 34 miles from the north at 8 p. m., and a maximum velocity between 9 and 10 p. m. of 32 miles an hour from the north at Norfolk, and 52 miles from the north at Cape Henry; both maximum velocities occurring at 9:10 p. m.

Between the time of anchorage and 2:30 in the evening, the Ribston dragged her anchor to within three ship's lengths of the barges, and drifted further to the westward. At the latter hour she put out her starboard anchor on 45 fathoms of cable, and lengthened her port cable from 30 to 45 fathoms. Between 3 and 4 o'clock in the evening, the barges cut loose one from the other, leaving the Flora in her original position—the Alice and Clara dropping back upstream, and to the southward, under the influence of a flood tide, a distance of a quarter of a mile and half a mile, respectively, and there anchored; the Alice being furthest from the Flora. The Ribston's master, shortly after anchoring in the morning, about 10 o'clock, went ashore, leaving his ship in command of the first officer. Upon returning at 5 o'clock, he observed the change in the location of the vessels, and his attention was called to the ship's having dragged her anchor. The several vessels remained in these positions, without further change or alteration, until about 9:30 p. m., when the Ribston again dragged her anchor, passing to the westward of the Flora, and collided with the other two barges.

The Ribston contends that this latter dragging of her anchor was caused by a sudden squall, with an unexpected change in the direction of the wind, during which the anchor gave way, causing her to collide with the two barges, and that the collision was thus the result of inevitable accident, from causes which the navigators of the Ribston could not have foreseen, and against which they could not reasonably have provided. Respondent further insists that the accident was brought about by the Clara and Alice having changed their positions from their original anchorage ground, and dropped back into the course in which the ship drifted.

The conclusions reached by the court are: First. That the Ribston owed the obligation and duty to the barges in question to give them ample and safe berths, and that there was no reason, because of the existence of weather or other conditions, or a crowded harbor, why the same should not have been done; that her first anchorage, as shown by the result, was not sufficient to prevent the ship from dragging, under the then weather conditions, in an exposed place of anchorage. Secondly. That likewise, for the same reason, her second anchorage was insufficient. Thirdly. That the ship had ample warning, by reason of the weather conditions throughout the day, and later in the evening, when her master came aboard, knowing the fact that the ship had already dragged a distance of from half to three-quarters of a mile, to a position of close proximity to the barges, and every precaution should have been taken to see that the barges were afforded a safe anchorage, and especially that there would be no fur-

ther dragging of the ship's anchors. Fourthly. The respondent having failed to meet the burdens imposed upon her in these respects, and damage having resulted therefrom to the libelant as a result of the collision between the Ribston and the barges, the former should be held solely liable to the latter, who were free from fault for the injury sustained.

The suggestion of the Ribston that the collision was caused by the change in the anchorage of the two barges in question cannot be maintained, for the reason that the Ribston owed to the barges, and not the barges to the Ribston, the obligation of providing safe anchorage, and the act of the barges in casting loose, and drifting further away from the Ribston, after she had drifted half a mile nearer to them, was a wise and seamanlike precaution, brought about because of the drifting ship, and they were not expected, in the selection of their new location, which was the natural and proper one for them to have made, to assume and anticipate that the Ribston would further drag her anchor and drift into them; and, moreover, separating the barges, when lashed one to the other, to positions of reasonable distances apart up and down stream, and out of the channel, was just what should have been done, having proper regard to the existing threatened weather conditions.

The respondent's defense of inevitable accident cannot be maintained under the circumstances and facts of this case, for the reason that in the opinion of the court the preponderance of the evidence, having regard to the locality of the collision, does not show the existence of such stormy weather conditions, and the sudden coming on of the same, as would excuse the Ribston from liability; and, moreover, the ship being entirely in fault by reason of the failure properly to maintain her anchorage, cannot interpose such defense as an excuse for her negligence.

It follows, from what has been said, that the steamship Ribston, being solely in fault for the happening of the collision in question, should be held liable for the damage sustained; and a decree will be entered so determining.